McCormick et al., Appellants, v. Haley, Appellee.

(No. 73AP-172—Decided November 6, 1973.)

*Messrs. Glander, Brant, Ledman & Newman,* for appellants.

*Messrs. Cline, Hoskins & Boesel,* for appellee.

Whiteside, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas sustaining a motion for a directed verdict in favor of defendant, appellee herein, at the conclusion of all the evidence.

Plaintiffs are the surviving spouse and children of Jean McCormick, deceased, who, prior to her death, was a patient of defendant, an osteopathic physician. She was hospitalized on February 26, 1969, and died on March 13, 1969. At the time of her hospitalization, defendant's office was contacted with respect to her hospitalization and information obtained as to the medication she was receiving. Notwithstanding this, on April 23, 1969, a communication was mailed to the decedent by defendant's office, stating: "A check-up will keep you smiling * * * Missed You!" Immediately following the receipt of this communication, the plaintiff surviving spouse mailed a handwritten mes-

sage to defendant's office indicating the death of the decedent and protesting the communication as being, "careless and unduly cruel to those of us who were surviving."

Thereafter, an action was commenced against defendant in connection with the death of decedent. Defendant was served with a summons in that case, on February 25, 1970. Despite this, on March 4, 1970, a second communication was mailed from defendant's office addressed to the decedent which contains *inter alia,* the following statement: "Remember, every woman can be beautiful and a joy to all those around her, if she wishes." In June of 1971, a third communication was mailed from defendant's office, but this communication was not addressed to decedent but rather to her daughter, plaintiff Nicole McCormick. This communication consisted of three pages and included the same statement quoted above from the second communication. Plaintiffs contend that these communications under the circumstances give rise to an actionable invasion of their privacy.

Defendant admitted that the three communications were mailed from his office but denied any personal knowledge of the mailings. He testified that the April 1969 communication was a reminder sent by his staff of a missed appointment; that the March 1970 communication was "one of our annual letters that we send to our patients of record"; and that the June 1971 communication was "an annual mailing to patients of record." He further testified that he had no personal knowledge of the death of the decedent until served with a summons on February 25, 1970, but admitted in answer to an interrogatory, apparently posed in another action, to the question as to when he learned of the death of decedent, the following: "I have no specific recollection but believe it was several months after her death." He further testified that he did not recall receiving the handwritten letter from the plaintiff surviving spouse and to his knowledge had never seen it.

The trial court overruled motions for a directed verdict at the conclusion of the opening statement and at the conclusion of plaintiffs' case, but sustained a motion by defendant for a directed verdict at the conclusion of all the

evidence. Plaintiffs appeal, indicating a single assignment of error as follows:

"The trial court erred in sustaining defendant-appellee's Motion for a Directed Verdict at the close of all the evidence."

At the outset, it must be noted that there was some confusion on the part of the trial court as to the proper test to be applied in ruling on the motion for a directed verdict. This is reflected by the following statement of the trial court during the ruling on the motion:

"Now, of course, the test that I must apply at the end of all the evidence is whether or not reasonable minds can come to but one conclusion, and that conclusion is adverse to the Plaintiff in this particular case. The test is different at the end of an opening statement; the test is also different at the end of the Plaintiffs' case; the test at that time is a prima facie case, and so now the test is whether reasonable minds can differ."

There are two problems with the trial court's statement: First, the test to be applied in ruling on a motion for a directed verdict is the same regardless of the stage of the proceedings. Second, the trial court did not mention the requirement that the evidence must be construed most strongly in favor of the party against whom the motion is directed. Civ. R. 50(A) (1) provides:

"A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence."

Civ. R. 50(A) (4) sets forth the test to be applied by the trial court in ruling upon such a motion for a directed verdict as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

The same test is to be applied regardless of the stage

at which the motion is made. With respect to a motion made at the time of the opening statement, the test is applied to the evidence the party indicates, in his opening statement, will be offered. With respect to a motion directed at the plaintiff at the conclusion of his case, the test is applied to the evidence that the plaintiff has presented. With respect to a motion made at the close of all the evidence, the test is applied to all the evidence. There are two parts to the test: one, that the evidence must be construed most strongly in favor of the party against whom the motion is directed; and two, it must be found that reasonable minds could come to but one conclusion upon the evidence submitted when so construed. We are able to determine whether the trial court properly applied the required test since the trial court did comply with Civ. R. 50 (E), which requires that:

"When in a jury trial a court directs a verdict or grants judgment without or contrary to the verdict of the jury, the court shall state the basis for its decision in writing prior to or simultaneous with the entry of judgment. Such statement may be dictated into the record or included in the entry of judgment."

The statement of the trial court leads this court to the conclusion that the trial court did not construe the evidence most strongly in favor of plaintiffs. The trial court accepted as true defendant's testimony that the 1970 and 1971 communications were communications sent by defendant "to his list of patients, whether active or inactive as a part of an annual mailout." However, the trier of the facts, in this case the jury, is entitled to believe or disbelieve all or part of the testimony of any witness. The only evidence that these communications were annual mailouts was the testimony of defendant himself. However, the evidence indicates that the 1970 communication addressed to the decedent was mailed approximately one week after defendant was served with summons in the other action. The 1971 communication was addressed to the decedent's daughter who had not been a patient of defendant since 1967. There is no indication that she received an "annual mailout" in any of the intervening years. Construing the evidence most strongly in favor of plaintiffs and considering the hand-

written letter sent to defendant following the 1969 communication; the timing of the 1970 communication in relation to the service of summons; and the fact that the 1971 communication was the only one received by the daughter, although she ceased to be a patient of defendant in 1967, we are required to make a finding, for the purposes of the motion for a directed verdict, that reasonable minds could conclude the communications were special mailouts, not routine annual mailouts, to patients.

This does not dispose of the matter because a court of appeals must affirm a judgment of the trial court if it reached the right conclusion, even if the determination was made through invalid reasoning. The issue in this case is not whether plaintiffs proved the allegations of their complaint, because, when the evidence is construed most strongly in their favor they essentially did so, but, rather, is whether plaintiffs have a cause of action for an invasion of privacy. The court knows of and has been cited to no case wherein the fact situation was similar to that involved here.

Each person possesses a right of privacy and may maintain an action for a wrongful invasion thereof. See *Housh* v. *Peth* (1956), 165 Ohio St. 35, the second paragraph of the syllabus of which reads as follows:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

Obviously, the question in this case is whether defendant by sending the communications in question committed a wrongful intrusion into plaintiffs' activities "in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." In *Housh,* the Supreme Court recognized that "a campaign to harass and torment" a person constitutes a wrongful invasion of his privacy. Here it would be difficult to find a campaign to harass and torment the plaintiffs. Likewise,

it would be difficult to find the first communication, standing alone, to constitute harassment and tormenting of plaintiffs. However, construing the evidence most strongly in favor of plaintiffs, reasonable minds could conclude that the second communication, and possibly the third communication, was designed to harass and torment the plaintiffs. While it is an extension of *Housh*, we conclude that a single act of harassment and torment of a person can constitute an actionable invasion of the right of privacy when it is accomplished in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

It must be remembered, however, that an actionable invasion of the right of privacy "is an intentional tort analogous to trespass and battery in protection of personal integrity." *Lecrone* v. *Ohio Bell Telephone Co.* (1963), 120 Ohio App. 129, 131. A mere negligent intrusion into one's private activities does not constitute an actionable invasion of the right of privacy. Thus, if the trier of the facts were to accept, as the trial court did, the defendant's testimony that the communications were only negligently and not intentionally sent, there could be no right of recovery. However, we are of the opinion, construing the evidence most strongly in favor of plaintiffs, that reasonable minds could conclude that the second and possibly the third communication was sent intentionally for the purpose of harassing and tormenting the plaintiffs, in view of the fact that such communication was sent approximately one week after service of summons upon the defendant in the other action against him apparently for wrongful death of the decedent.

For the foregoing reasons, the assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

TROOP, P. J., and REILLY, J., concur.