PRINCE ET AL., APPELLANTS, *v.* ST. FRANCIS-ST. GEORGE HOSPITAL, INC. ET AL., APPELLEES.

(No. C-840244—Decided January 31, 1985.)

*Martin D. Jahn* and *Kenneth W. Scott,* for appellants.

*Spalding, Grause & Philipps* and *Kurt A. Philipps,* for appellee St. Francis-St. George Hospital, Inc.

*Rendigs, Fry, Kiely & Dennis* and *Frederick Brockmeier IV,* for appellee Comprehensive Care Corporation.

*Lindhorst & Dreidame, Leo J. Breslin* and *Mark E. Elsener,* for appellees H. W. Neumann, M.D. and Frank J. Scharold, M.D.

KEEFE, P.J. During the months of December 1981 and January 1982, appellant Blanche B. Prince was an inpatient in the care unit of St. Francis-St. George Hospital, Hamilton County, Ohio, being treated for an alcohol-related illness. She and her husband Russell maintain that upon her admission to the hospital they were given written guarantees of privacy by the hospital and its agents and employees. Mrs. Prince contends that while in the hospital she was treated by Doctors Neumann and Scharold who, she asserts, were then agents or employees of the hospital or agents or employees of Comprehensive Care Corporation which had a contract with the hospital to operate the particular care unit in which Mrs. Prince was a patient.

Near the end of her stay in the care unit of the hospital, a fellow employee of Mr. Prince, by the name of L. W. Dickerson, received in the mail a health insurance claim form in the office where both he and Mr. Prince worked in the Dixie Terminal Building, Cincinnati. Dickerson was a co-worker of Mr. Prince; Dickerson was not authorized to receive insurance payment request forms. In fact, it is somewhat enigmatic how the form under any circumstances was sent to Dickerson. However, it was, and he opened it. It had been sent to Dickerson by Dr. Scharold, one of Mrs. Prince's treating physicians. That it was sent by him is not gainsaid. The following diagnosis of Mrs. Prince's condition was included on the claim form sent by

Dr. Scharold to Mr. Prince's office for the attention of Dickerson — and opened by the latter: "Acute & Chronic Alcoholism Detoxification."

The Princes' version of what flowed from what they claim was the publication of Mrs. Prince's chronic alcoholism, contrary to their express instructions and deep-felt wishes, is expressed as follows in their complaint:

"6. As a direct and proximate result of the joint and several actions of the defendants, Blanche B. Prince suffered extreme humiliation, shame, embarrassment and severe mental and emotional stress, in addition to past and present and future medical bills, in the sum of $260,000.

"7. As a direct result of the joint and several actions of the defendants, Russell O. Prince suffered extreme humiliation, shame, embarrassment, and severe mental and emotional stress. * * * In addition, Mr. Prince has lost employment opportunities with his employer and has been caused to lose salary increases with the said employer, a loss of $270,000."

Ultimately all the defendants, *viz.,* the hospital, Comprehensive Care Corporation which operated the care unit, and Dr. Neumann and Dr. Scharold, moved for summary judgment which was granted in favor of all defendants. The Princes have appealed, advancing one assignment of error: the trial court erred in granting summary judgment for the defendants. (Actually there are independent orders granting the separate motions for summary judgment.)

The solitary error assignment is well-taken with respect to the Comprehensive Care Corporation and Dr. Scharold and Dr. Neumann, its employees. However, the remonstration against the judgment below fails as to the hospital, which is entitled to the summary judgment which was granted in its favor.

The threshold issue presented by this appeal is whether the sending of the bill with the medical diagnosis of alcoholism prominently indicated in connection therewith by Dr. Scharold to the office of the husband's employer was publication of personal information without permission so that it violated the wife's right to privacy. Correlated issues are whether the hospital or the Comprehensive Care Corporation, or both, are responsible if Dr. Scharold is; is Dr. Neumann responsible under the doctrine of *respondeat superior* since he was head of the unit treating Mrs. Prince; and is Mr. Prince's claim for consequential damages valid?

We add a word here in explanation of our finding that the assignment of error does not avail as to the hospital. Both defendant doctors are private physicians who were (and perhaps are) members of the hospital's medical staff. They were not employees of the hospital. Whatever tortious action is attributable to the two doctors, or their employer, Comprehensive Care Corporation, does not extend to the hospital under the circumstances here present.

When Mrs. Prince was admitted to the care unit operated by the Comprehensive Care Corporation and assigned to the care of Dr. Neumann, the admitting record particularized that her in-patient status so far as privacy was concerned was "Restricted Code — Not to Publish." Whatever motivated Dr. Scharold to mail the medical form with the telltale information about Mrs. Prince's acute and chronic alcoholism to Mr. Prince's office for the attention of Dickerson is not demonstrated in the record *sub judice* so far as we are able to ascertain. Nevertheless, as already referenced, Dr. Scharold did definitely mail the problem material to Dickerson. Mr. Prince in his deposition states that he is convinced that Dickerson saw the critical alcoholism reference. Dickerson in his affidavit of February 1, 1984 admits that he "opened and read" the content of the envelope which Dr. Scharold mailed to him, Dickerson. Thus there is a genuine issue of material fact about whether there was publication by Dr. Scharold of the private information about Mrs. Prince's alcoholism. Moreover, applying Civ. R. 56, particularly the portion which provides that the party against whom the motion for summary judgment is made is entitled to have the evidence construed most strongly in his or her favor, there is a genuine issue of material fact as to whether Dr. Scharold invaded Mrs. Prince's right to privacy. Also, there is a genuine issue as to damages *vis a vis* Dr. Scharold. The error assignment is well-taken as to Dr. Scharold.

Counsel for the two physicians argue that even if we were to determine that there was sufficient evidence to conclude that the telltale diagnosis had been published, the fact remains that appellants' cause of action must nevertheless fail since there is absolutely no proof that the disclosure, if any, was intentional. A mere negligent intrusion into one's private affairs, it is contended on behalf of the doctors, does not constitute an actionable invasion of privacy. In advocating this position appellees Scharold and Neumann rely strongly upon *McCormick* v. *Haley* (1973), 37 Ohio App. 2d 73 [66 O.O.2d 132]. We cannot agree that there is absolutely no proof that the disclosure by Dr. Scharold was not intentional. Rather, his name appears on the envelope in which the arguably offending material was mailed to a complete stranger to the hospitalization (Dickerson); also, Dr. Scharold's name appears on the mailed form as Mrs. Prince's physician. It appears that appellees Scharold and Neumann in urging this argument may be equating intentional with malicious, or with bad will. The Princes are not alleging that any of the defendants acted maliciously, nor do we believe it necessary for them to so allege in order properly to claim an actionable invasion of the right of

privacy. We feel that we must observe that we have some present reluctance to agree unreservedly with the following *obiter dictum* from *McCormick* v. *Haley*:

"* * * A mere negligent intrusion into one's private activities does not constitute an actionable invasion of the right of privacy. Thus, if the trier of the facts were to accept, as the trial court did, the defendant's testimony that the communications were only negligently and not intentionally sent, there could be no right of recovery. * * *" *Id.* at 78.

We find puzzling the postulation in *McCormick* v. *Haley* that seems to conclude that "negligently" and "intentionally" are mutually exclusive. We believe that in given factual situations there could well be mixed negligence and intention. We do not elaborate on this point, nor is it necessary for us to do so. We also have some trouble with the statement in *McCormick* v. *Haley* that "[a] mere negligent intrusion into one's private activities does not constitute an actionable invasion of the right of privacy." It seems to us that a negligent invasion of the right of privacy, which is a distinct possibility in the factual scenario *sub judice,* can just as effectively invade one's right of privacy as an intention to do so.[1]

*McCormick* v. *Haley, supra,* at 77, cites *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], for the proposition that "[e]ach person possesses a right of privacy and may maintain an action for a wrongful invasion thereof. * * *" The second paragraph of the *Housh* syllabus, which reads as follows, is cited as an authority in *McCormick* v. *Haley*:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

*McCormick* v. *Haley* notwithstanding, as we read this rule of *Housh,* it does not limit "wrongful intrusion" to intentional intrusion; it seems to us the *Housh* rule allows for an actionable invasion of the right of privacy through negligence as well as intent.

Dr. Scharold is thus a proper defendant whether his potential ultimate liability is predicated on his intentional acts (preparing and mailing the telltale material), or upon the negligence of those acts.

The record before us indicates that Dr. Neumann was the admitting physician for Mrs. Prince and allegedly Dr. Scharold worked for Dr. Neumann so far as Mrs. Prince was concerned. At least, it is claimed that Dr. Neumann was Dr. Scharold's supervisor. They were both employees of Comprehensive Care Corporation. Applying the doctrine of *respondeat superior,* as we consider we must, summary judgment should not have been granted in favor of Dr. Neumann or the Comprehensive Care Corporation. The portion of the error assignment which challenges the judgment below as to them has merit.

This, then, leaves the issue of whether the summary judgments below are proper as to Mr. Prince with his claim for consequential damages. We

---

[1] As is apparent from the directions recently taken by the Supreme Court of Ohio, the rights of injured individuals to recover damages have been significantly broadened. In a situation analogous to the one here, the court stated in *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, syllabus:

"A cause of action may be stated for the *negligent* infliction of serious emotional distress without a contemporaneous physical injury. (*Miller* v. *Baltimore & Ohio S. W. RR. Co.,* 78 Ohio St. 309, and its progeny, overruled.)" (Emphasis added.)

have read his deposition and note anew that his claim is for $270,000 damages. Candor impels us to remark that after reading his deposition it does seem that the amount of his damages claimed appears facially as rather lavish. Nevertheless, we are not prepared to find as a matter of law that there is no genuine issue as to any material fact as to Russell Prince's claim against the two physicians and the Comprehensive Care Corporation. Therefore, the assignment of error so far as he is concerned is well-taken as it applies to the doctors and the Comprehensive Care Corporation.

In summary, our holdings follow. This recapitulation is to be credited only as it corresponds to elucidative subject matter in this opinion proper:

(1) We affirm the order below granting summary judgment to St. Francis-St. George Hospital, Inc.

(2) We reverse the order below granting summary judgment to Dr. H. W. Neumann and Dr. Frank J. Scharold.

(3) We reverse the order below granting summary judgment to Comprehensive Care Corporation.

Additionally, we remand for further proceedings according to law.

*Judgment affirmed in part, reversed in part and cause remanded.*

PALMER and DOAN, JJ., concur.