OPINION
Defendant-appellant, Shesham Abdalla, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of gross sexual imposition and one count of kidnapping.
According to the state's evidence, for many years Jada Porras ("Porras") cashed weekly child support checks at defendant's store on East Livingston Avenue in Columbus, Ohio. Defendant often would ask Porras for a date, and Porras would deflect or reject defendant's queries. On one occasion, defendant left her driver's license at the store after cashing a check. Defendant refused to give the driver's license to Porras' mother even though Porras asked her mother to inquire if Porras had left her driver's license at the store. When Porras retrieved her license from defendant, Porras questioned defendant about his refusal to give the driver's license to Porras' mother. Defendant claimed that keeping the license was the only way he could see Porras and have a picture of her. Defendant often queried Porras' mother about her daughter when Porras' mother patronized defendant's store.
Shortly before noon on October 8, 2000, Porras, who had broken her toe and was using crutches, went to defendant's store to cash a child support check that was for an unusually large sum. Initially, defendant declined to cash the check because of its large amount. Later, defendant offered to cash the check after he finished assisting customers who were in the store. After the customers left the store, Porras waited for defendant who went to the back of the store. While she waited, defendant approached Porras from behind and grabbed her. Defendant pushed Porras over a magazine rack in the store. Defendant locked down Porras' arms, gyrated behind her, forced one of his hands down her shirt, squeezed her breasts, and digitally penetrated her vagina with the other hand. During the incident, defendant also ejaculated in his hand and made offensive comments to Porras. After giving defendant a sharp blow with her elbow, Porras freed herself and fled.
After fleeing the store, Porras first went to her grandmother's house, and then to her fiancé's house. Porras did not immediately disclose anything about the attack to her grandmother. Only later did Porras disclose the attack to her fiancé. According to Porras, she was fearful the attack would jeopardize her upcoming naval career for which she just had been determined to be fit for full duty. She was also fearful disclosure of the attack to her brother and fiancé would cause them to retaliate against defendant. The following morning, however, Porras contacted police to report the sexual assault. Approximately two to three days after the attack, defendant contacted Porras' mother and stated he need to talk with her.
According to defendant's evidence, two days after the attack, in response to police questioning, Porras stated that defendant did not put his hands inside her pants because defendant was unable to unzip or unbutton her pants. In addition, a store employee who was working in the store near the area of the alleged attack stated he did not witness any assault at the time Porras claimed defendant attacked her. Similarly, a store customer also denied witnessing any assault.
For his part, defendant denied Porras' claims about his sexually assaulting her. Defendant instead claimed Porras rubbed defendant's hand and he understood she would do anything to make defendant cash the support check. Defendant refused to cash the check because the amount was too great. In response, while defendant assisted some customers, Porras came behind the store counter, gave defendant a hug, stood by him for a minute, and then told defendant that she knew he could cash the check because the store always had a large amount of money. Defendant unsuccessfully attempted to rebuff Porras. At defendant's request, Porras then left the store.
A few minutes later, however, Porras returned to the store, again attempted to cash her check, came behind the counter, stated defendant should be able to cash her check, and suggested that she and defendant should go on a date. Defendant once more informed Porras that he could not cash her check and pushed Porras toward the door without any resistance from her. Defendant admitted that he called Porras' mother a few days after the date of the alleged attack, but defendant stated the telephone call concerned a request for assistance in arranging a party that a friend wanted to hold at the hotel where Porras' mother worked. Defendant also disputed Porras' account of his refusal to give her driver's license to Porras' mother. Instead, defendant claimed he instructed his employee not to give the driver's license to Porras' mother because his policy was to return a driver's license only to the owner of the license.
Pursuant to a jury trial, defendant was found not guilty of rape as charged in count one of the indictment, but guilty of the lesser included offense of gross sexual imposition. The jury also found defendant guilty of gross sexual imposition as charged in count two of the indictment, and guilty on one count of kidnapping as charged in count three of the indictment. Following the verdict, the trial court sentenced defendant to twelve months incarceration on count one, twelve months incarceration on count two, and three years incarceration on count three, with the sentences to be served concurrently. The trial court also ordered a fine of $5,000. Defendant timely appeals, and assigns three errors:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR CONTINUANCE AND ALLOWING THE TESTIMONY OF A WITNESS WHOSE IDENTITY WAS DISCLOSED THE MORNING OF TRIAL, THEREBY VIOLATING CRIM. R. 16 AND DEPRIVING APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 II. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE PROSECUTING ATTORNEY TO INTRODUCE HEARSAY TESTIMONY THROUGH A DEFENSE WITNESS, THEREBY DEPRIVING APPELLANT OF HIS RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 III. THE FAILURE OF APPELLANT'S COUNSEL TO OBJECT TO HIGHLY DAMAGING HEARSAY TESTIMONY CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, THEREBY DEPRIVING APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
In his first assignment of error, defendant contends the trial court erred (1) in denying defendant's motion for a continuance, and (2) allowing the testimony of a witness whose identity was disclosed on the morning of trial in violation of defendant's due process rights and Crim.R. 16.
On January 25, 2001, defendant's counsel filed a request for discovery. The state filed its demand for discovery on February 22, 2001. Proof of supplemental discovery by the state was filed on March 8, 2001. Following a pretrial on March 13, 2001, the parties indicated in a pretrial statement that discovery was complete, and a trial date of March 27, 2001 was scheduled.
On the day of trial, however, a discovery and procedural dispute arose. Defendant objected to the state's supplemental discovery sheet, disclosing four additional witnesses to defendant on the morning of trial. Defendant, in essence, requested a continuance. The state, in response, claimed defendant finalized his discovery only the day before trial when defendant provided the state with a proper address and telephone number of one of the defense witnesses. The state further asserted some of the witnesses were put on its supplemental discovery list in response to defendant's witness information provided to the state the day before trial.
The trial court resolved the matter and presented defendant with a choice:
 THE COURT: Well, seems like the only equitable thing to do here is I'm not continuing it and you knew it wouldn't be continued, and you knew as of yesterday it wouldn't be continued * * *
 I'll let you decide. Do you want to call those four witnesses and let him call these for rebuttal purposes, or do you want to scrap all of them entirely?
 [DEFENSE COUNSEL]: I think I need my witnesses, so I'm not scrapping them all entirely. (Tr. 8-9.)
The state then explained that one of the state's witnesses, Porras' mother, would be called in its case-in-chief in response to two defense witnesses, one of whom the state was able to interview only the day before trial as a result of the witness information defendant presented that day. Following defendant's response to the state's request, the trial court allowed the state to present the witness in its case-in-chief; the court, however, allowed defendant an opportunity to speak with the witness before the witness testified. Although the state listed four witnesses on its supplemental discovery list, only Porras' mother testified.
In State v. Unger (1981), 67 Ohio St.2d 65, 67, the Ohio Supreme Court noted "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." See State v. Adams (1980), 62 Ohio St.2d 151,157 ("The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable"). In Unger, the Ohio Supreme Court further observed "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id., quoting Ungar v. Sarafite (1964), 376 U.S. 575, 589.
In reviewing a trial court's exercise of discretion, an appellate court must weigh any potential prejudice to the defendant against a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Unger, supra, at 67. When evaluating a motion for a continuance:
 [A] court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for continuance; and other relevant factors, depending on the unique facts of each case. * * * Unger, supra, at 67-68.
Here, in its evaluation of defendant's motion for a continuance, the trial court did not expressly or by inference analyze any of the factors outlined in Unger. Instead, without hearing counsels' arguments, the trial court determined it would not grant a continuance of the case. Because the trial court failed to evaluate defendant's motion for a continuance using the factors outlined in Unger, the procedure the trial court employed in denying defendant's request for a continuance is flawed.
More particularly, the trial court denied defendant's motion for a continuance before hearing counsels' arguments. At a minimum the trial court should have inquired into the defendant's need for a continuance and evaluated the motion for a continuance using the factors outlined in Unger. Moreover, because defendant alleged a possible discovery rule violation by the state and moved for a continuance at the same time, the trial court should have at least inquired into the circumstances surrounding the alleged discovery rule violation before it summarily denied the defense motion for a continuance. See City of Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, paragraph two of the syllabus ("A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery").
Nonetheless, examining the circumstances before the trial court in the context of the Unger factors, we note that not until the day before trial did defendant provide the state with a proper address and telephone number for one of the defendant's witnesses. Because of defendant's tardy disclosure of this witness's proper address and telephone number, the state did not have the opportunity to locate and interview that witness until a day before trial. Based on an interview with that witness, the state filed supplemental discovery. Under Unger, a court properly may consider whether a defendant contributed to the circumstance that gave rise to a request for a continuance in determining whether to grant a continuance. Moreover, because of the timing of defendant's disclosure and request for a continuance, a change in the trial date would have inconvenienced, at the least, the witnesses involved.
Despite the absence of an express rationale, the trial court did not err in denying defendant's motion for a continuance because the record contains a lawful basis for the trial court's ruling. See Gunsorek v. Pingue (1999), 135 Ohio App.3d 695, 701, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1478, quoting State v. Payton (1997),124 Ohio App.3d 552, 557 ("when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial"); see, also, McCormick v. Haley (1973), 37 Ohio App.2d 73, 77 ("a court of appeals must affirm a judgment of the trial court if it reached the right conclusion, even if the determination was made through invalid reasoning").
Moreover, defendant's argument that he was prejudiced by the trial court's failure to grant a continuance and by the testimony of the state's additional witness is unpersuasive. In support of his argument, defendant notes in particular that Porras' mother testified to a telephone call she received from defendant a few days after October 8, 2000, in which defendant stated he needed to talk with her and asked her to come to the store. While the testimony of Porras' mother may suggest by implication that defendant had a guilty state of mind, it is ambiguous at best. Indeed, the state not only did not contend in its closing argument that defendant's call reflected a guilty state of mind, it did not reference that aspect of the evidence.
Lastly, defendant contends the state violated Crim.R. 16 because it did not timely disclose its witnesses to the defense. As noted, defendant's tardiness in providing the address and telephone number of a witness prompted the state's request to tardily present an additional witness in its case-in-chief. Moreover, defendant concedes the state's failure to disclose Porras' mother as a witness was not willful. Rather, after receiving the proper address and telephone number of the defense witness on the day before trial, and after interviewing this witness that day, the state in response determined it would call her. Given the circumstances leading to the state's tardy disclosure, coupled with the trial court's discretion to resolve discovery disputes of this nature, we cannot say the trial court abused its discretion in allowing the state to present Porras' mother as a witness. See State v. Parks (1990),69 Ohio App.3d 150, 155 ("A failure to provide the identity of a state witness is excusable if the failure was inadvertent or provision was impossible, but it is error if not justifiable"). Moreover, even if the trial court erred, defendant sustained no substantial prejudice as a result of her testimony. Defendant's first assignment of error is overruled.
In his second assignment of error, defendant contends the trial court committed plain error by allowing the introduction of hearsay evidence through the testimony of a defense witness, thereby depriving defendant of the constitutional right to confrontation under the Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution.
Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prove plain error, a defendant must demonstrate that, but for the error, the trial's outcome would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, 97. Additionally, "[n]otice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of syllabus.
In this case, on cross-examination the state questioned a store employee about events subsequent to October 8, 2000, when Porras' brother came to defendant's store. The prosecution inquired what Porras' brother said, and the witness responded: "He said who is the somebody try to attack my sister, because I didn't give him attention really, because there's a lot of customers at that time, and he walked out and I watch him at the window, he's like 30 minutes outside in the parking lot." (Tr. 124.)
Under Evid.R. 801(C), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See, also, State v. Maurer (1984), 15 Ohio St.3d 239, 262. Here, the parties dispute whether the store employee's statement was offered to prove the truth of the matter asserted, or whether the statement was elicited as an explanation for the witness's recollection of the date in question and its significance.
Even if the statement be hearsay, the statement was not so prejudicial that, but for the error, the trial's outcome would have been otherwise. Long, supra, at 97. Porras' brother does not accuse defendant of attacking his sister. Instead, he inquires about the identity of the assailant. Indeed, to some extent his statement detracts from Porras' claims that defendant was the one who attacked her. As a result, even if the statement were admitted for the truth of the matter asserted, it cannot be deemed plain error. Accordingly, defendant's claim is unpersuasive insofar as he asserts the statement of Porras' brother corroborated Porras' testimony, rendering its admission prejudicial. For the same reasons, defendant's argument under Evid.R. 403(A) also is unpersuasive. Accordingly, defendant's second assignment of error is overruled.
Defendant's third assignment of error contends defendant's failure to object to the testimony subject of his second assignment of error constitutes ineffective assistance of counsel.
To demonstrate ineffective assistance of counsel defendant first "* * * must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
Here, even if counsel should have objected to the statement as hearsay, defendant suffered no measurable prejudice because, the statement, as noted, not only did not accuse defendant of attacking Porras, but went so far as to inquire who committed the attack. Because defendant suffered no prejudice, his claim of ineffective assistance of counsel fails. Accordingly, defendant's third assignment of error is overruled.
Having overruled defendant's first, second, and third assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
McCORMAC and LAZARUS, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.