SMITH, Appellant,

v.

A.B. BONDED LOCKSMITH, INC. et al., Appellees. ▮

[Cite as *Smith v. A.B. Bonded Locksmith, Inc.* (2001), 143 Ohio App.3d 321.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000166.

Decided Feb. 16, 2001.

*Bernard Lieberman,* for appellant.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Thomas E. Deye,* Assistant Prosecuting Attorney, for appellee John Jennings.

*Freund, Freeze & Arnold* and *John J. Garney III,* for appellees Ball Furniture Company, S.G. and B., Inc., and Robert Lowery.

*Rendings, Fry, Kiely & Dennis* and *James McLean,* for appellees A.B. Bonded Locksmith, Inc., and Cherry Bell Mister.

PAINTER, Judge.

Plaintiff-appellant Deloris Smith awoke one morning to find several strangers in the entrance hallway inside her home. The strangers were acting under the

authority of a court order to repossess furniture that had been purchased by Smith's daughter. They entered the home with the services of a locksmith, and it is unclear from the record whether they knocked or called out in an attempt to gain voluntary admittance before they resorted to the locksmith's services. Unfortunately, the furniture was not, nor apparently had it ever been, in Smith's home. Smith objected to the clandestine entry and requested that the interlopers leave. They complied without further disturbance and departed amicably.

Almost two years later, Smith sued the parties that she believed to be responsible for personal injuries allegedly stemming from the incident: defendants-appellees A.B. Bonded Locksmith, Inc., and its Vice President, Cherry Bell Mister; S.G. and B., Inc., doing business as Ball Furniture Company, and its collections attorney, Robert R. Lowery; and John Jennings, the deputy bailiff for the clerk of courts who appears to have been, but did not remember being, the officer responsible for enforcing the court's judgment of repossession. Without explanation, the trial court granted all of the defendants-appellees' motions for summary judgment on all eight of Smith's claims.

Smith now appeals and raises as her single assignment of error the trial court's entry of summary judgment. We assume from this assignment that Smith is contending that there are genuine issues of material fact and that at least one of the defendants-appellees is not entitled to judgment as a matter of law. We disagree and affirm, primarily because we see this case in essence as one for negligent trespass, and the defendants-appellees were properly absolved of any liability in this respect due either to insufficient proof or to statutory immunity.

## I. Summary–Judgment Standard

We review the trial court's grant of summary judgment in favor of A.B. Bonded, Mister, Ball Furniture, Lowery, and Jennings *de novo*, using the same standard that the trial court applied.[1] Under Civ.R. 56(C), summary judgment in favor of the defendants-appellees was appropriate if they demonstrated that (1) there was no genuine issue of material fact, (2) each was entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for Smith, reasonable minds could only reach a conclusion adverse to her.[2]

In this case, when the defendants-appellees sought summary judgment, they had to inform the court of the basis for their motions and identify those

---

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.

2. See *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

portions of the record that supported their position.[3] If this initial burden was satisfied, Smith then bore a reciprocal burden of specificity.[4] To decide whether an evidentiary conflict existed that would preclude summary judgment, the evidence and the inferences to be drawn from the underlying facts had to be construed in a light most favorable to Smith as the nonmoving party.[5] But only disputes over "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."[6]

## II. Negligent Trespass

To establish a case of trespass, Smith had to show that the defendants-appellees, without authority or privilege, physically invaded or unlawfully entered her home, and that damages directly ensued.[7] The act of nonconsensual entry could have been either intentional or negligent.[8] Further, the common law recognizes that even if no damage was done by the trespass, or even if the injury was slight, the trespass could still give rise to at least a claim for nominal damages.[9]

The first claim in Smith's complaint alleged reckless, willful, or negligent trespass by all defendants-appellees. Nothing in the record suggests that the conduct of any of the defendants-appellees was reckless or willful. But with the record construed most favorably to Smith, there are two general theories under which Smith might have asserted that their conduct amounted to negligent trespass.

---

3. See *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164, 1171.

4. *Id.*

5. See *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044, 1046.

6. See *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211.

7. See *Apel v. Katz* (1998), 83 Ohio St.3d 11, 19, 697 N.E.2d 600, 607, quoting *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598, 615 N.E.2d 631, 633.

8. See *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.* (1998), 128 Ohio App.3d 33, 42, 713 N.E.2d 1075, 1081, quoting *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598, 615 N.E.2d 631, 634.

9. See *Pearl v. Pic Walsh Freight Co.* (1960), 112 Ohio App. 11, 12, 15 O.O.2d 338, 338–339, 168 N.E.2d 571, 572. See, also, *Pembaur v. Cincinnati* (S.D.Ohio 1990), 745 F.Supp. 446, 456; *United States v. Operation Rescue* (S.D.Ohio 1999), 112 F.Supp.2d 696, 701; *Horner v. Whitta* (July 27, 2000), Seneca App. No. 13–99–64, unreported, 2000 WL 1049309.

■ First, Smith might have claimed that Ball Furniture and Lowery, acting as an agent of and counsel to Ball Furniture, were negligent in procuring a court order of possession that specified an address where the furniture was apparently not located. The record is clear, however, that Ball Furniture had obtained the address in its dealings with Smith's daughter and that Smith's daughter no longer lived at the same address where the furniture was delivered. In addition, Lowery had obtained service on Smith's daughter at Smith's address on an unrelated matter. Without more, Smith's claims that Lowery or Ball Furniture was negligent in procuring a court order of possession for her address failed as a matter of law.

■ It next appears that Smith objected to the manner in which those parties present served the order of possession. This was Smith's strongest argument, though it would initially appear that the Jennings group was authorized to enter her home under a lawful order of possession. But, under R.C. 2737.17 and 2737.01(F), a levying officer executing an order of possession is authorized to enter a home only if reasonable efforts are made to determine if anyone is in the home, and only if, after making those reasonable efforts, the levying officer reasonably believes that no one is in the home. Construing this record in a light most favorable to Smith as the law requires, we hold that an issue of fact exists as to whether reasonable efforts were made to determine if anyone was in Smith's home.

Four people sought entrance to Smith's home under the order of possession: the locksmith, two furniture movers from Ball Furniture, and Jennings, who was the bailiff executing the court order. There is no evidence in the record from the furniture movers. The locksmith's affidavit states only that he opened the locked front door under the direction of the bailiff, but is otherwise silent about any attempts to ascertain occupancy of the home. Jennings's affidavit states that he had no recollection of the specific incident because he served over one hundred fifty orders of possession annually. His affidavit also states that a bailiff was to announce his presence by knocking, ringing a doorbell if there was one, and speaking out. Jennings believed that he would have acted in good faith.

By contrast, Smith was admittedly sleeping before she awoke to the sounds of voices inside her home and therefore could not be sure what had transpired before she woke up. But Smith did submit the affidavit of a neighbor who stated that he observed the parties seeking entrance to Smith's home, and that he did not see them knock or ring a door bell. Although the neighbor was standing only two houses away, he was unable to state whether he observed the men the entire time they sought entrance to Smith's house, or whether he heard anyone call out in any way.

In the context of the summary-judgment motions, Smith was entitled to the inference that she would have come to the door if she had been awakened. She was also entitled to have her neighbor's incomplete affidavit construed in her favor. Aside from this, defendants-appellees provided little evidence that appropriate procedures were followed in this instance. Under these conditions, the record arguably raises an issue of fact as to the reasonableness of the efforts of the group led by Jennings to determine whether Smith's house was occupied. A finding of a failure to use reasonable efforts would support the imposition of liability on a theory of negligence *per se,* for violation of R.C. 2737.17 and 2737.01(F).

Ordinarily, this record would present an issue of fact for determination by a trier of fact. But, in this case, that issue is not material, because those who entered Smith's home in search of the furniture were entitled to statutory immunity for any negligence.

### III. Statutory Immunity

Initially, there are two theories of immunity upon which the defendants-appellees have relied: absolute judicial or quasi-judicial immunity, and qualified statutory immunity under R.C. 2744.03. Because the defendants-appellees are entitled to qualified statutory immunity for any negligence, we do not decide whether they were also entitled to absolute judicial or quasi-judicial immunity.

Absolute judicial immunity is based on the common-law principle that a judge is immune from civil liability for acts that are an exercise of judicial discretion in a controversy properly before the court.[10] By extension, agents of the court also have absolute immunity from suits that arise from acts that are judicial or quasi-judicial.[11] Whether an act by an agent of the court is judicial or quasi-judicial, and thus immunized, turns on whether the act is discretionary or ministerial in nature.[12] Court interpretation of this distinction has led to arguably inconsistent results.[13] Though R.C. 2744.03(A)(7) expressly authorizes us to

---

**10.** See *Kelly v. Whiting* (1985), 17 Ohio St.3d 91, 93, 17 OBR 213, 214–215, 477 N.E.2d 1123, 1126–1127, citing *Stump v. Sparkman* (1978), 435 U.S. 349, 356–357, 98 S.Ct. 1099, 1104–1105, 55 L.Ed.2d 331, 338–340.

**11.** See *Kelly v. Whiting* (1985), 17 Ohio St.3d 91, 93–94, 17 OBR 213, 214–216, 477 N.E.2d 1123, 1126–1128. See, also, *Loyer v. Turner* (1998), 129 Ohio App.3d 33, 36, 716 N.E.2d 1193, 1195.

**12.** See *Antoine v. Byers & Anderson, Inc.* (1993), 508 U.S. 429, 436–437, 113 S.Ct. 2167, 2171–2172, 124 L.Ed.2d 391, 399–401.

**13.** See, generally, *Willitzer v. McCloud* (1983), 6 Ohio St.3d 447, 6 OBR 489, 453 N.E.2d 693; *Loyer v. Turner* (1998), 129 Ohio App.3d 33, 716 N.E.2d 1193; *Baker v. Court of Common Pleas*

enter this quagmire, we see no reason to do so when the statutory immunity of R.C. 2744.03(A)(6) is readily applicable to this case.

Under R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless one of three enumerated exceptions applies. The definition of political subdivision in R.C. 2744.01(F) specifically includes counties, and it is clear that as a deputy bailiff for the Hamilton County Clerk of Courts, Jennings met the definition of an employee under R.C. 2744.01(B). The definition of employee also encompasses an "agent * * * whether or not compensated * * * who is authorized to act and is acting within the scope of the * * * agent's * * * employment." We therefore hold that any statutory immunity available to Jennings under R.C. 2744.03(A)(6) was also available to the Ball Furniture employees and the locksmith who entered Smith's home, subject to Jennings's control, under the authority of a facially valid court order of possession.

R.C. 2744.03(A)(6)(a) through (c) enumerate the three exceptions to qualified statutory immunity for employees of political subdivisions. The employee is immune unless "(a) [h]is acts or omissions were manifestly outside the scope of his employment or official responsibilities; (b) [h]is acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) [l]iability is expressly imposed upon the employee by a section of the Revised Code." There is nothing in this record to support a finding that the Jennings group was acting outside the scope of Jennings's employment when they entered Smith's home under a valid court order of possession. Nor is there anything to support a finding that the Jennings group acted maliciously, in bad faith, or in a wanton or reckless matter.

Arguably, Jennings may have failed to take reasonable precautions to determine whether Smith's home was occupied when he sought entry. And while a failure to take reasonable precautions under these circumstances would have been contrary to Jennings's statutory duty under R.C. 2737.17 and 2737.01(F), liability is not expressly imposed by the Revised Code for this failure.

Since none of the three exceptions to statutory immunity applied to the Jennings group, we hold that all members of the Jennings group were entitled to summary judgment on Smith's claim of negligent trespass.

Having examined Smith's most substantive claim, we turn now to a variety of other claims in Smith's complaint to the extent that we can discern a claim stated

of Cuyahoga Cty. (1989), 61 Ohio App.3d 59, 572 N.E.2d 155; Dalhover v. Dugan (1989), 54 Ohio App.3d 55, 560 N.E.2d 824; Bethel v. Dunipace (1988), 57 Ohio App.3d 89, 566 N.E.2d 1252; Dalton v. Hysell (1978), 56 Ohio App.2d 109, 10 O.O.3d 131, 381 N.E.2d 955; Inghram v. Sheffield Lake (Mar. 7, 1996), Cuyahoga App. No. 69302, unreported, 1996 WL 100843.

with reasonable particularity and argued on appeal. In each instance, we affirm the trial court's grant of summary judgment.

## IV. Invasion of Privacy

The second claim in Smith's complaint was for invasion of her privacy. While the Supreme Court of Ohio has recognized three actionable variations on invasion of privacy,[14] there is only one variation arguably applicable to these circumstances. This type of invasion of privacy is "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."[15] We have previously held that wrongful intrusion is not limited to intentional intrusion, and that invasion of one's right to privacy might occur negligently as well as intentionally.[16] Finally, we agree that a four-year statute of limitations under R.C. 2305.09(D) normally applies to a claim for wrongful intrusion into one's seclusion.[17]

As stated previously, the Jennings group was entitled to immunity for any negligence arguably demonstrated in this record. So, to survive a motion for summary judgment, it was incumbent upon Smith to present at least a question of material fact about whether the defendants-appellees had intentionally, wantonly, or recklessly intruded on her privacy. But the record is devoid of any showing that the defendants-appellees acted in such a manner to intrude upon Smith's seclusion. In fact, notice was sent in advance by mail that the Jennings party would be at Smith's home on the day and time in question to repossess furniture.

Defendants-appellees were entitled to summary judgment on Smith's claim of invasion of privacy. There is nothing in the record to support a finding that the intrusion into Smith's home was intended to invade her privacy. In addition, the Jennings group was entitled to statutory immunity for any negligent intrusion on Smith's seclusion.

## V. Abuse of Process

To survive a motion for summary judgment on her claim of abuse of process, Smith had to offer at least a question of material fact on the three

---

**14.** See *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph two of the syllabus.

**15.** *Id.*

**16.** See *Prince v. St. Francis–St. George Hosp., Inc.* (1985), 20 Ohio App.3d 4, 7, 20 OBR 4, 7–8, 484 N.E.2d 265, 269.

**17.** See *Hidey v. Ohio State Hwy. Patrol* (1996), 116 Ohio App.3d 744, 751, 689 N.E.2d 89, 93–94.

elements of the tort. The three elements are "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."[18] A claim for abuse of process must be brought within four years under R.C. 2305.09.[19]

While there was a proper legal proceeding to repossess furniture in this case, there is nothing in the record to suggest that the proceeding was perverted to accomplish an ulterior motive. Certainly a mistake was made, or the Jennings party would not have entered a home and surprised the occupant, only to discover that the items to be repossessed were not there. But there is no indication in the record of any ulterior motive for converting a valid process into an unsuccessful and presumably embarrassing episode. The defendants-appellees were, accordingly, entitled to summary judgment on this claim.

### VI. Unconscionable Repossession Practices

 Smith's final claim was that the repossession practices of Ball Furniture were unconscionable because the repossession employees or agents did not have a procedure manual to follow, and had not attended training seminars in proper repossession techniques. Smith alleged that the absence of these procedures and seminars violated provisions of two separate statutes: the Ohio Consumer Sales Practices Act and the Federal Fair Debt Collection Practices Act.

 R.C. 1345.03 prohibits a supplier of consumer goods from engaging in "an unconscionable act or practice in connection with a consumer sales transaction * * * before, during, or after the transaction." Because the statute applies to acts or practices after a transaction has been completed, it may encompass debt collection.[20] But on the record before us, even if it is true that Ball Furniture did not provide its agents and employees with training and procedure manuals, we cannot conclude that such a failure was unconscionable. This is so because the record indicates that the Ball Furniture agents were at Smith's home only to move furniture. The entry into Smith's home was under the direction of a deputy bailiff, who was required to follow the procedures specified in the valid

---

18. See *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph one of the syllabus.

19. See *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph two of the syllabus.

20. See *Broadnax v. Greene Credit Serv.* (1997), 118 Ohio App.3d 881, 892, 694 N.E.2d 167, 174, citing *Celebrezze v. United Research, Inc.* (1984), 19 Ohio App.3d 49, 19 OBR 131, 482 N.E.2d 1260.

order of possession. We cannot conclude that a question of material fact exists as to whether Ball Furniture trained its agents in, or memorialized, appropriate collection procedures. Provided that the agents were capable of following the instructions of the deputy bailiff overseeing the repossession, and capable of physically moving the furniture, nothing more was required.

Smith's claim that Ball Furniture violated the Federal Fair Debt Collection Practices Act was time-barred. Section 1640(e), Title 15, U.S.Code provides that a claim under the Act must be brought within one year from the date of the incident. Smith brought her complaint almost two years after the incident.

### VII. Conclusion

The record in this case supports at best a question of material fact about whether the Jennings party was negligent in the way it entered Smith's home. But Jennings, a deputy bailiff, and those acting under his control, were entitled to statutory immunity for negligence in facilitating a court order of possession. While we are not unsympathetic to Smith's situation, the record simply does not pose a question of material fact involving the sort of intentional or reckless behavior that would be necessary for Smith to prevail at trial. The judgment of the court of common pleas is, therefore, affirmed.

*Judgment affirmed.*

GORMAN, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.