[Cite as *Vesper v. Otterbein Lebanon*, 2021-Ohio-4545.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| MARY GLORIA VESPER, et al., | : | |
| Appellants, | : | CASE NO. CA2021-02-016 |
| | : | O P I N I O N |
| - vs - | | 12/27/2021 |
| | : | |
| OTTERBEIN LEBANON, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CV92211

Pro Senior, Inc., and Miriam H. Sheline and M. Elizabeth Hils, for appellants.

The Holfinger Stevenson Law Firm, Ltd., and Michael S. Kearns; Rolf Goffman Martin Lang LLP, and David S. Brown and W. Cory Phillips, for appellee.

**BYRNE, J.**

{¶1} Plaintiffs, Mary Gloria Vesper and Catherine Vesper (collectively, "the Vespers"), appeal from the decision of the Warren County Court of Common Pleas, which denied the Vespers' motion for summary judgment and granted the summary judgment motion of Defendant, Otterbein Lebanon Seniorlife Community ("Otterbein")t, thereby dismissing the Vespers' claims against Otterbein for alleged violations of the Ohio

Consumer Sales Practices Act.  For the reasons discussed below, we affirm the trial court's decision.

## I. Factual Background

{¶2}    Mary Gloria Vesper was the wife of George Vesper.  Catherine Vesper is Mary Gloria and George's daughter.  George was admitted to Otterbein's long-term care facility in October 2015 and began receiving personal care and nursing services, as well as room and board.  Contemporaneous with George's admission, Mary Gloria signed Otterbein's Residency Agreement.  Mary Gloria executed the Residency Agreement as "Representative," which is a defined term in the agreement.  George did not sign the Residency Agreement.

{¶3}    Consistent with federal and state laws and regulations, the Residency Agreement specifically provided that the person executing the agreement as Representative bore no personal liability as to the financial obligations incurred by the Resident for services rendered by Otterbein.[1]  However, the Representative did agree to the following relevant terms:

> Duty of Representative on Behalf of Resident.
> During the term of his/her residency, the Resident may need assistance in arranging for payment for the services provided. You have asserted to Otterbein that the Representative shall act in a fiduciary capacity on the Resident's behalf to satisfy the Resident's financial obligations under this Agreement if the Resident chooses not to, or is unable to, meet those obligations. The Resident shall be primarily responsible for making payments to Otterbein until such time as he/she assigns the responsibility for making payment to the Representative or until he/she can no longer make payments on his/her own behalf; at such time, the Representative shall become primarily responsible for making such payments.

---

1. Federal and state law prohibits nursing facilities from requiring a third party to personally guarantee payment of charges incurred by a resident. 42 U.S.C. 1396r(c)(5)(A)(ii) and (B)(ii); 42 C.F.R. 483.15(a)(3); and O.A.C.5160-3-02(C)(4).  These statutes and regulations, however, do not prohibit a nursing facility from requiring third parties who have access to the resident's funds from entering into a contract requiring payment by the third party from the resident's funds. *Id.*

Legal Authority to Access Resident's Funds.
You have asserted that the Representative has legal access to the Resident's income, assets or resources, including, but not limited to, social security, pension or retirement funds, annuities, insurance, bank accounts, and mutual funds; and, You understand that Otterbein is entering into this Agreement in reliance on that assertion. * * *.[2]

Diversion of Resident's Resources.
Representative agrees to be a good financial steward of the Resident's income, resources and assets over which he/she has control. * * * If any payments or funds of the Resident that are available to pay for the Resident's care are withheld, misappropriated for personal use, or otherwise not turned over to Otterbein for payment of the Resident's financial obligations under this Agreement, then Representative agrees to pay those amounts to Otterbein from the Representative's own resources. * * *.

{¶4} Catherine was not present during George's admission. She also did not sign the Residency Agreement. However, Catherine had previously met with Otterbein's representatives and provided them with a copy of a general, durable power of attorney nominating her as George's attorney-in-fact. Catherine worked with Otterbein's Medicaid specialist to transition the payments of George's Medicaid benefits to Otterbein.[3]

{¶5} George's Medicaid benefits were successfully transitioned to pay for Otterbein's services. Otterbein's Medicaid specialist regularly contacted Catherine, requesting and receiving certain records to ensure that Otterbein continued receiving George's Medicaid benefits. From October 2015 through July 2017, Otterbein received uninterrupted payments from the Ohio Department of Medicaid for services and supplies furnished to George.

{¶6} However, on July 31, 2017, George's Medicaid benefits were terminated. This was apparently due to a determination by Job and Family Services that George had failed

---

2. The Residency Agreement defined "You," as referring to both the Resident and Representative.

3. Prior to entering Otterbein, George was receiving Medicaid benefits and had been at a different facility.

to "cooperate with the redetermination process." It is not clear from the record how the agency made this determination. Catherine and Otterbein thereafter worked on submitting a new application for Medicaid benefits on behalf of George. George's Medicaid benefits were eventually reinstated, but not for many months. Despite not being paid during this period of time, Otterbein continued providing George with healthcare services and room and board.

{¶7} George died in February 2018, prior to a determination regarding his new, pending Medicaid application. At the time of George's death, Otterbein had still not been paid for services and room and board rendered to George between August 2017 and February 2018. George's outstanding bill at Otterbein at that time was approximately $61,000.

## II. The Hamilton County Lawsuit

{¶8} In April 2018, Otterbein filed suit against Mary Gloria and Catherine in the Hamilton County Court of Common Pleas. Against Mary Gloria, Otterbein alleged breach of contract, promissory estoppel, and a claim for necessaries under R.C. 3103.03(C). Against Catherine, Otterbein asserted claims for promissory estoppel and a statutory action pursuant to R.C. 1337.092(B) for alleged negligent/unauthorized acts Catherine undertook as George's attorney-in-fact.

{¶9} The Vespers separately answered and counterclaimed. The counterclaims both alleged that Otterbein had violated Ohio's Consumer Sales Practice Act, R.C. 1345.02 and 1345.03 ("CSPA"). Specifically, the Vespers allege that they were consumers and Otterbein was a supplier under the CSPA and that Otterbein acted unfairly, deceptively, and unconscionably by filing the Hamilton County lawsuit and attempting to collect a debt upon which neither Mary Gloria nor Catherine were liable.

{¶10} In July 2018, Otterbein moved to dismiss the Vespers' counterclaims, arguing

that the Vespers lacked standing to bring CSPA claims against Otterbein. The Vespers filed memoranda in opposition and the matter was fully briefed.

{¶11} In September 2018, George's Medicaid benefits were retroactively reinstated via an administrative appeal. Otterbein thereafter received payment for George's past due amount. Otterbein dismissed its claims against the Vespers in the Hamilton County lawsuit. The Vespers' counterclaims remained pending.

{¶12} In October 2018, the Hamilton County common pleas court judge's law clerk emailed the parties to advise them that the judge intended to grant Otterbein's motions to dismiss the Vespers' counterclaims. He also requested that Otterbein prepare, and the Vespers review, a proposed entry. However, hours later, and before the court's dismissal entry was prepared or filed, the Vespers voluntarily dismissed their counterclaims under Civ.R. 41(A)(1), terminating the Hamilton County lawsuit.

### III. The Warren County Lawsuit

{¶13} Six months later, in April 2019, the Vespers filed this action against Otterbein in the Warren County Court of Common Pleas. The Vespers' new complaint included near identical CSPA claims to those they had previously filed and then dismissed in Hamilton County.[4]

{¶14} The parties filed competing motions for summary judgment. In the Vespers' summary judgment motion, in relevant part, they argued that Otterbein violated the CSPA by wrongfully filing suit against them in Hamilton County and additionally violated the CSPA by failing to refund Mary Gloria with an approximate overpayment of $5,076.79 of George's Medicaid benefits for 21 months.

---

4. Otterbein moved to transfer the case to Hamilton County. The Warren County court denied the motion. The court, while indicating its concern for what appeared to be forum shopping, observed that venue was proper in Warren County and the Vespers had an absolute right, regardless of motive, to dismiss their Hamilton County claims under Civ.R. 41(A)(1).

{¶15} The trial court denied the Vespers' summary judgment motion and granted Otterbein's summary judgment motion. In granting Otterbein's motion, the trial court found that Catherine was not a "consumer" with respect to her interaction with Otterbein and therefore lacked standing to assert a CSPA claim. The court noted that Catherine had not signed the Residency Agreement, nor was she present at its signing.

{¶16} The court did find that Mary Gloria was a consumer with respect to Otterbein because she had signed the Residency Agreement and had entered into a transaction with Otterbein in a fiduciary capacity. However, the court found that there was nothing "wholly unfair, deceptive, or unconscionable" with respect to Otterbein's action of filing suit against the Vespers in Hamilton County. The court noted that the Residency Agreement indicated the potential that Otterbein would bring suit against Mary Gloria in her capacity as "Representative" if Otterbein was not paid for the services provided to George.

{¶17} With respect to the overpayment refund, the court found that Otterbein had not acted unfairly, deceptively, or unconscionably. The court noted that Mary Gloria was not the person entitled to the refund, and instead those funds were owed to George's estate, which was not a party to the suit. Accordingly, the court found that Mary Gloria lacked standing to claim that the delayed release of the overpayment was a CSPA violation.

{¶18} The Vespers appeal, raising two assignments of error, which we will address out of order.

### IV. Law and Analysis

{¶19} Assignment of Error No. 2:

{¶20} THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT DISMISSING APPELLANT MARY GLORIA VESPER'S CLAIMS.

{¶21} In their second assignment of error, the Vespers argue the trial court erred in dismissing their CSPA claims because they were wrongfully sued in Hamilton County, the

filing of the lawsuit constituted a CSPA violation, and because Otterbein delayed refunding to Mary Gloria an overpayment of George's Medicaid benefits.

## A. Standard of Review

{¶22} This court reviews a trial court's summary judgment decision under a de novo standard. *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7. Summary judgment is appropriate under Civ.R. 56 when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his favor. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998).

{¶23} The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party "must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings." *Sexton* at ¶ 7; Civ.R. 56(E).

## B. Overview of the CSPA

{¶24} The CSPA prohibits unfair or deceptive acts or practices and unconscionable acts or practices by suppliers in consumer transactions. R.C. 1345.02(A) and 1345.03(A); *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990). A "consumer" is defined as "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). A "supplier" is a "seller, lessor, assignor, franchisor, or other person engaged in the business

of effecting or soliciting consumer transactions * * *."  R.C. 1345.01(C).  A "consumer transaction" means "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  R.C. 1345.01(A).

{¶25}  R.C. 1345.02(B) contains a representative list of unfair and/or deceptive practices.  In one example, a supplier violates the CSPA if it makes false claims as to the quality or newness of the subject of a consumer transaction.  R.C. 1345.02(B)(2) and (3).  In another example, a supplier acts deceptively if it falsely informs a consumer that repair or replacement is needed.  R.C. 1345.02(B)(7).

{¶26}  R.C. 1345.03(B)(1) through (7) presents a list of considerations for a trial court to undertake in determining whether an act or practice was "unconscionable."  One example is where a "supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement* * *."  R.C. 1345.03(B)(1).  When these examples and considerations are considered together, "the CSPA defines "unfair or deceptive consumer sales practices" as those that mislead consumers about the nature of the product they are receiving, while "unconscionable acts or practices" relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue."  *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24.

{¶27}  Unfair, deceptive, or unconscionable acts or practices constitute a CSPA violation whether they occur before, during, or after the consumer transaction.  R.C. 1345.02(A) and 1345.03(A).  Accordingly, "[t]he collection of debts associated with consumer transactions is within the purview of the [CSPA] since it covers acts which occur

before, during, or after the transaction." *Broadnax v. Greene Credit Serv.*, 118 Ohio App.3d 881, 892 (2d Dist.1997), citing *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49 (9th Dist.1984). *Accord Smith v. A.B. Bonded Locksmith, Inc.,* 143 Ohio App. 3d 321, 331 (1st Dist.2001).

### C. Analysis of Otterbein's Hamilton County Lawsuit Claims as Alleged CSPA Violations

{¶28} In the proceedings below, the parties stipulated that Otterbein qualified as a "supplier" for CSPA purposes.[5] But Otterbein disputed that the Vespers were "consumers" under the CSPA and disputed that the parties engaged in a "consumer transaction" with Otterbein. We will presume, for purposes of deciding this assignment of error only, that both Catherine and Mary Gloria qualified as "consumers" under the CSPA and that they engaged Otterbein in a "consumer transaction." As demonstrated below, it is unnecessary for us to decide these questions because we do not find that Otterbein's action of authorizing its legal counsel to file the Hamilton County lawsuit constituted an unfair, deceptive, or unconscionable practice in conjunction with a consumer transaction. After careful review of the background facts, pleadings, and relevant law, there is nothing about the Hamilton County complaint, i.e., its content and claims, that is unfair, deceptive, or unconscionable under the CSPA.

{¶29} The Vespers did not dispute many of the basic factual allegations of the complaint. That is, the parties do not dispute that George was admitted to Otterbein, that Mary Gloria signed Otterbein's Residency Agreement as "Representative," or that Otterbein was aware that George designated Catherine, via a durable power of attorney, as his attorney-in-fact. The parties further do not dispute that Catherine was actively involved in

---

5. Residential care facilities, such as Otterbein, have been considered "suppliers" that are subject to the CSPA. *Elder v. Fischer*, 129 Ohio App.3d 209, 215, (1st Dist.1998).

George's care and with assisting Otterbein with obtaining George's Medicaid benefits. The parties further agree that for six months leading to his death, Otterbein provided personal and nursing services and room and board to George and was not paid for those services at that time.

{¶30} Based upon these facts, and for the reasons explained below, the legal claims asserted by Otterbein against the Vespers were colorable and the assertion of those claims does not constitute an unfair, deceptive, or unconscionable act or practice under the CSPA. We will analyze each claim separately.

### a. Breach of Contract Claim Against Mary Gloria

{¶31} With regard to Mary Gloria, Otterbein asserted breach of contract. There were obvious grounds for this claim given that it was undisputed that Mary Gloria signed the Residency Agreement, which contained terms in which she represented that she had access to George's assets and that she would act in a fiduciary capacity with respect to satisfying George's financial obligations incurred at Otterbein. Otterbein alleged that it had not been paid and that Mary Gloria had breached aspects of the agreement relating to assuring payment of George's assets.

{¶32} The Vespers challenge the legitimacy of the breach of contract claim on two grounds. First, they argue that the Residency Agreement was unenforceable because it was unsigned by George, and Mary Gloria could not guarantee an unsigned contract. Second, they argue that Mary Gloria did not and could not sign the agreement on behalf of George because she was not his attorney-in-fact for financial purposes. These arguments are simply in the nature of legal defenses that the Vespers could have raised in the proceedings in Hamilton County had that litigation been decided on the merits. These arguments do not establish that the breach of contract claim was wholly baseless or that its assertion constituted a deceptive, unfair, or unconscionable act under the CSPA.

**b. Necessaries Claim Against Mary Gloria**

{¶33}  Otterbein also asserted a claim for necessaries against Mary Gloria, pursuant to R.C. 3103.03.  The necessaries statute imposes a statutory duty on spouses to support one another out of the person's property or labor and that if one spouse is unable to do so, the other spouse must assist in support so far as they are able.  R.C. 3103.03(A).  The statute further provides that if one spouse fails to support the other, then any other person may supply the spouse needing support with "necessaries," i.e., food, shelter, clothing, and medical services, and thereafter recover the reasonable value of necessaries supplied from the non-supporting spouse. R.C. 3103.03(C).  The statute has been utilized by nursing facilities seeking to obtain payment from the spouse of a non-paying resident.  *See Embassy Healthcare v. Bell*, 155 Ohio St.3d 430, 2018-Ohio-4912.  It is undisputed that Mary Gloria was George's spouse and that Otterbein provided George with necessaries during his stay at Otterbein's facility.  Thus, there were colorable grounds for the assertion of the necessaries claim and its assertion in the Hamilton County lawsuit was not an unfair, deceptive, or unconscionable act under the CSPA.

{¶34}  The Vespers nonetheless argue that the necessaries claim was groundless. The Vespers specifically argue that Otterbein was required by R.C. 2117.06(C) and *Embassy Healthcare* to present its claim to George's estate within six months of his death before it was permitted to pursue a necessaries claim, and that Otterbein's failure to do so barred its necessaries claim.

{¶35} This argument may have been a successful defense to Otterbein's necessaries claim, but it was only a defense.  The necessaries claim was not groundless when it was filed because it is undisputed that Otterbein provided George with care, room, and board for six months without being paid the $61,000 it was owed, and Mary Gloria was George's spouse.  In these circumstances, the fact that Otterbein asserted a colorable

necessaries claim does not establish an unfair, deceptive, or unconscionable act under the CSPA.

### c. Promissory Estoppel Claim Against Mary Gloria and Catherine

{¶36} Otterbein brought claims of promissory estoppel against both Mary Gloria and Catherine. Both claims appear colorable based on the undisputed, underlying facts. The promissory estoppel claim against Mary Gloria is effectively just an alternative theory of recovery with regard to the breach of contract claim. That is, if the court were to determine that the Residency Agreement was unenforceable, then Otterbein would argue that it relied upon Mary Gloria's promise to use her access to George's fund to pay for his nursing care at Otterbein.

{¶37} The promissory estoppel claim against Catherine also appears colorable based on the parties' situation. Otterbein alleged in its Hamilton County complaint that Catherine made some promises or guarantees to Otterbein's staff concerning payment for George so that he could remain in the facility for months following the termination of his Medicaid benefits. Otterbein's awareness of Catherine's status as George's attorney-in-fact could potentially make it reasonable for it to rely on such a promise – or at least, it made Otterbein's claim colorable.

{¶38} Nonetheless, the Vespers argue that Otterbein's promissory estoppel claim would be barred by R.C. 1335.05, the statute of frauds, which requires that any agreement to answer for the debt of another must be in writing. Again, this is a defense to a legal claim; it does not demonstrate that Otterbein's claims were not colorable, much less that the assertion of the claims in the Hamilton County lawsuit constituted an unfair, deceptive, or unconscionable act or practice under the CSPA.

### d. R.C. 1337.092(B) Claim Against Catherine

{¶39} Finally, Otterbein asserted a claim pursuant to R.C. 1337.092(B)(3) against

Catherine for damages in conjunction with allegedly negligent acts she undertook as George's attorney-in-fact. Like the aforementioned claims, this claim is also colorable based on the fact that Catherine was George's attorney-in-fact, frequently communicated with Otterbein regarding George's care and Medicaid benefits, and Otterbein alleged that Catherine's negligent failure to take certain actions as George's attorney-in-fact caused George to accrue a debt with Otterbein. The inclusion of the R.C. 1337.092(B) claim was not an unfair, deceptive, or unconscionable act under the CSPA.

### D. Analysis of Otterbein's Request for Contractual Interest and Attorney Fees as Alleged CSPA Violation

{¶40} The Vespers further argue that the Hamilton County lawsuit was unfair, deceptive, or unconscionable because Otterbein's complaint sought 18 percent interest and attorney fees on certain claims. The Vespers contend that Otterbein was not entitled to 18 percent interest or attorney fees, and, citing *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, argue that Otterbein's action constituted a violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq., as well as the CSPA. We disagree.

{¶41} In *Taylor*, the debt collector filed a lawsuit demanding interest at 24 percent. *Id.* at ¶ 26. However, the debt collector did not actually possess the credit card agreement to prove the contractual interest rate and otherwise would have only been entitled to interest at a rate of 4 percent. *Id.* at ¶ 26, 83. The Ohio Supreme Court noted that the debt collector "here went far beyond simply filing a complaint without yet having 'adequate proof of its claim.'" *Id.* at ¶ 83, *quoting Harvey v. Great Seneca Fin. Corp.*, 453 F.3d at 324, 333 (6th Cir.2006). The debt collector did not attach any document potentially supporting the claimed 24 percent interest rate, sought default judgment, and filed an affidavit signed by its employee asserting that 24 percent interest was owed, without any basis for that

assertion. *Id.* Essentially the debt collector in *Taylor* wholesale fabricated a claim that 24 percent interest was owed. The court held that the consumer could bring an action under the FDCPA and the CSPA in these circumstances where the requested interest rate was "unavailable under the law." *Id.* at ¶ 1, 83-86.

{¶42} This case is distinguishable from *Taylor.* Otterbein sought 18 percent interest and attorney fees only with respect to the breach of contract claim against Mary Gloria and the R.C. 1337.092(B)(3) claim against Catherine. Otterbein relied on the Residency Agreement, which contained a provision for interest accruing at the rate of 1.5 percent per month (or 18 percent annually) and also provided for the collection of attorney fees if Otterbein had to resort to collection efforts. Thus, Otterbein's request for contractual interest and attorney fees was not groundless and was colorable.

{¶43} This is not to say that Otterbein necessarily would have prevailed and properly been awarded 18 percent interest from Mary Gloria on its breach of contract claim against her and/or Catherine on its R.C. 1337.092(B)(3) claim against her if the Hamilton County case had proceeded. While it is not certain that Otterbein would have ultimately prevailed in obtaining interest at 18 percent or attorney fees on those specific claims, the request for interest and attorney fees was colorable and therefore did not constitute an unfair, deceptive, or unconscionable act under the CSPA.

### E. Analysis of Otterbein's Failure to Refund Overpayment as Alleged CSPA Violation

{¶44} The Vespers argue that the trial court erred in finding that Otterbein did not violate the CSPA by its "refusal" to refund a $5,076.79 overpayment for 21 months. The "overpayment" was seemingly due to the July 2018 decision of the Bureau of State Hearings, which, in reinstating George's Medicaid benefits, also redetermined his monthly patient liability.

{¶45} The record indicates Mary Gloria had requested, through counsel, that Otterbein issue a check for the overpayment to her personally. Otterbein resisted this request and instead offered to issue a check to the Estate of George Vesper. The check was eventually issued to George's Estate in May 2020 at the Vespers' counsel's request.

{¶46} It is undisputed that the refund did not belong to Mary Gloria and instead was property of George's estate. The record indicates that Otterbein offered to transfer the refund proceeds to George's estate, but that Mary Gloria wanted the refund to be issued to her personally. Otterbein argues that it could not comply with Mary Gloria's demand without exposing itself to potential liability. We find nothing unfair, deceptive, or unconscionable under the CSPA with respect to the timing of the overpayment refund.

### V. Conclusion

{¶47} Based on the foregoing, we find that there are no genuine issues of material fact remaining to be litigated that would preclude summary judgment, that Otterbein was entitled to summary judgment, and that even when the facts are construed in favor of the Vespers, reasonable minds can come to but one conclusion: the challenged actions by Otterbein were not unfair, deceptive, or unconscionable for purposes of the CSPA. For the foregoing reasons, we overrule the Vespers' second assignment of error.

{¶48} Assignment of Error No. 1:

{¶49} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING THE CLAIMS OF APPELLANT CATHERINE VESPER.

{¶50} In their first assignment of error, the Vespers contend that the trial court erred in its determination that Catherine was not a "consumer" under the CSPA with respect to her involvement with Otterbein. However, given this court's resolution of the second assignment of error, the issue is moot and need not be addressed. App.R. 12(A)(1)(c). Accordingly, we overrule the Vespers' first assignment of error.

{¶51} For all of these reasons, and based on our review of the record, we affirm the trial court's decision to grant Otterbein's motion for summary judgment and to deny the Vespers' motion for summary judgment.

{¶52} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.