[Cite as *Bell v. Cedar Fair, LP*, 2025-Ohio-3112.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| NATALIE BELL, ET AL., | : | CASE NO. CA2024-11-080 |
| Appellants, | : | |
| | : | OPINION AND JUDGMENT ENTRY 9/2/2025 |
| - vs - | : | |
| | : | |
| CEDAR FAIR, LP, DBA CEDAR FAIR ENTERTAINMENT COMPANY AND DBA KINGS ISLAND, | : | |
| | : | |
| Appellee. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CV96457

Brannon & Associates, and Kevin A. Bowman, for appellants.

Reminger Co., LPA, and Molly E. Davis, for appellee.

**O P I N I O N**

**BYRNE, P.J.**

{¶ 1} Appellants, Yana Tandan and Natalie Bell (collectively, "the Plaintiffs"), appeal from a decision of the Warren County Court of Common Pleas, which granted

summary judgment for appellee, Cedar Fair, L.P., d.b.a. Cedar Fair Entertainment Company and Kings Island ("Cedar Fair").

**I. Factual Background and Procedural History**

**{¶ 2}** On August 18, 2023, the Plaintiffs filed a personal injury lawsuit against Cedar Fair, raising one claim for negligence/premises liability. According to their complaint, the Plaintiffs visited Kings Island amusement park and sustained injuries while waiting in line for the Invertigo roller coaster.[1] Specifically, the complaint alleged that both Plaintiffs were struck by a cell phone that had not been properly secured by an Invertigo rider. They alleged that Cedar Fair failed to take reasonable measures to protect guests from falling objects, specifically citing inadequate protective netting above the area where Plaintiffs were waiting in line to board Invertigo. Cedar Fair answered the complaint and later, after discovery, moved for summary judgment. Cedar Fair submitted the Plaintiffs' deposition testimony in support of the summary judgment motion, but the Plaintiffs submitted no summary judgment evidence.

**{¶ 3}** On October 22, 2024, the common pleas court granted summary judgment for Cedar Fair. The court found that the evidence was "insufficient to establish that the cellphone came from a rider on the Invertigo coaster." In reaching this conclusion, the court noted that Bell had testified that the phone flew through air but did not testify that the phone came from a rider on Invertigo. The court also noted that Tandan "cloud[ed] the origin of the phone" by testifying "so they say probably that's what we got hit with," which the court took to mean that Tandan "cannot confirm she was struck with a cellphone." The court also noted that Tandan testified, "I wasn't even sure what's

---

1. We note the Plaintiffs have been inconsistent regarding the date of the incident. While some pleadings identify the date as August 21, 2022, the Plaintiffs stated in their depositions and in their appellate briefing that the incident occurred on August 21, 2021. This discrepancy, however, does not affect our resolution of this matter.

happened exactly." The court stated that "the mere existence of an alleged injury and nothing more is insufficient to give rise to liability," and so found that "no genuine issue of material fact remains" and summary judgment should be awarded in Cedar Fair's favor.

{¶ 4}   But the common pleas court did not stop its analysis there. The court also explained that, even assuming that Plaintiffs' testimony were sufficient to establish that Cedar Fair breached a duty of care, the court would still find that "Plaintiffs' failure to disclose an expert witness to establish the breach of the duty of ordinary care is fatal to their claim." Rejecting Plaintiffs' argument to the contrary, the court explained that "Ohio courts have consistently held that injuries arising from amusement park rides warrant expert testimony," and noted that Plaintiffs needed expert testimony to establish that the protective netting that was in place near the Invertigo ride "was insufficient or somehow deviated from industry standards." In the absence of such testimony, the court found that Cedar Fair "has sustained its burden and established lack of genuine issue of material fact" and its entitlement to summary judgment. The court entered summary judgment in Cedar Fair's favor, dismissing the Plaintiffs' claims.

{¶ 5}   Plaintiffs appealed, raising one assignment of error.

## II. Analysis

{¶ 6}   Plaintiffs' sole assignment of error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT/APPELLEE ON PLAINTIFF'S [sic] CLAIMS FOR PERSONAL INJURY.

{¶ 7}   In their sole assignment of error, Plaintiffs allege the trial court erred by granting summary judgment for Cedar Fair.

### A. Summary Judgment Standard

{¶ 8}   "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v.*

*Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.), citing *Roberts v. RMB Ents. Inc.*, 2011-Ohio-6223, ¶ 6 (12th Dist.).

{¶ 9} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 10} The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Vesper v. Otterbein Lebanon*, 2021-Ohio-4545, ¶ 23 (12th Dist.); *Touhey v. Ed's Tree & Turf, L.L.C.*, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 1996-Ohio-107, ¶ 17. The moving party "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 21 (2d Dist.), citing *Dresher* at ¶ 17. Once the moving party meets this burden, the nonmoving party has a reciprocal burden requiring it to present evidence to demonstrate that there is some issue of material fact yet remaining to be resolved. *Smedley v. Discount Drug Mart, Inc.*, 2010-Ohio-5665, ¶ 11 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche*

*Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

{¶ 11} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently, and without deference to the trial court's decision. *Davis v. Royal Paper Stock Co., Inc.*, 2022-Ohio-4135, ¶ 56 (12th Dist.); *Wulf v. Bravo Brio Restaurant Group, Inc.*, 2019-Ohio-3434, ¶ 15 (12th Dist.).

**B. Negligence/Premises Liability**

{¶ 12} "To establish a negligence claim, the plaintiff must demonstrate (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) as a direct and proximate result of the defendant's breach, the plaintiff was injured." *Oliphant* at ¶ 32. To obtain summary judgment in a negligence case, the moving party must demonstrate that the plaintiff cannot prove at least one of these elements as a matter of law. *Morris v. Fields Family Ents., Inc.*, 2011-Ohio-3433, ¶ 10 (12th Dist.); *Patterson v. Adleta, Inc.*, 2018-Ohio-3896, ¶ 7 (1st Dist.).

{¶ 13} It is undisputed that the Plaintiffs were business invitees. Under Ohio law, a business owner or occupier owes invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204 (1985). But premises owners are not insurers against all accidents and injuries that may occur. *McQueen v. Kings Island*, 2012-Ohio-3539, ¶ 10 (12th Dist.). This principle applies equally to

amusement park operators. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359 (1979). The mere occurrence of an injury on the premises does not, by itself, establish negligence. *Baker v. Meijer Stores Ltd. Partnership*, 2009-Ohio-4681, ¶ 27 (12th Dist.).

{¶ 14} The Plaintiffs argue the trial court erred in finding that Plaintiffs cannot present evidence that the cell phone originated from a rider on Invertigo. The Plaintiffs argue they did provide such evidence, pointing to Bell's testimony that she observed a cell phone falling from the direction of Invertigo:

> [Cedar Fair's Counsel]:     So how do you know that the phone came from a rider on the Invertigo? Did you see the phone come off of the Invertigo?
>
> [Bell]:  Well, it was, like, by my side of the corner. You could see that something flew. So I knew it was a phone. It wasn't like a key chain or a knife, whatever people carry with them. So it was heavy enough. And I saw like – because I was talking to [Tandan], like, was moving to her face, you know, while we were talking, like, while I was talking to my friend. I knew that the thing flew down there. It was enough to give me time to realize what it was once it hit my foot.
>
> [Cedar Fair's Counsel]:     *Did you see the phone come off of the roller coaster?*
>
> [Bell]:  *Well, yeah.* We saw that it flew. I actually realized that it was flying. We knew – I couldn't tell that it was a phone. But, like, when it came closer, close enough that you could tell it was a phone. I don't know. Am I explaining enough? So we knew it was a phone.

(Emphasis added.) The Plaintiffs also point to Bell's testimony that Kings Island had identified the individual whose phone had fallen from the ride.

{¶ 15} The trial court acknowledged Bell's testimony about seeing the cell phone falling, but then quoted Tandan's testimony. Tandan was much less certain about the origin of the cell phone:

> [Tandan]:     I saw the phone, and we grabbed that phone. I don't think it was before that. First, I was thinking it's mine, but it wasn't mine. It wasn't [Bell's]. So, they say probably that's

- 6 -

what we got hit with.

Because I wasn't even sure what's happened exactly. I thought, like, somebody was standing behind me and smacked me like that.

[Cedar Fair's Counsel]: So, you're saying that you don't know you got hit by the phone?

[Tandan]: Right away, no. But then later when we try and see what happened exactly, because nobody's phone was around, we ask, like, is it anybody's? They say no. And then I cannot remember exactly, but that's what we understand, we got hit with the phone.

The trial court also noted that Tandan testified, "I wasn't even sure what's happened exactly." Apparently referring to both Bell and Tandan's testimony, the trial court then concluded, "This is insufficient to establish that the cellphone came from a rider on the Invertigo coaster."

{¶ 16} We disagree. While Tandan's testimony arguably could not establish that the cell phone which struck the Plaintiffs came from a rider on Invertigo, Bell testified quite clearly that she saw the cell phone flying down from the coaster. Bell's testimony, if believed, was sufficient to prove that the cell phone that struck the Plaintiffs was dropped from Invertigo. That this conclusion may have required an inference (specifically, an inference that a rider dropped the phone) does not present any difficulty, because reasonable inferences must be drawn in favor of the non-moving party in the summary judgment context, *Layer v. Kings Island Co.*, 2003-Ohio-2375, ¶ 10 (12th Dist.), and circumstantial evidence may prove a claim for negligence, *Shinn v. Village Ctr. Pharmacy*, 1981 Ohio App. LEXIS 14233, *2 (12th Dist. Dec. 9, 1981); *Mills v. Best Western Springdale*, 2009-Ohio-2901, ¶ 11 (10th Dist.); *Pariano v. Perrotti*, 2019-Ohio-4219, ¶ 14 (9th Dist.).

{¶ 17} While Cedar Fair highlights inconsistencies in the Plaintiffs' deposition

testimonies, and in particular argues Bell's testimony that she saw the cell phone falling from Invertigo was not credible, resolving such credibility issues is the role of the factfinder, not the court on summary judgment. *Base-Smith v. Lautrec, Ltd*., 2014-Ohio-349, ¶ 9 (12th Dist.) ("Summary judgment is not appropriate when the resolution of a factual dispute will depend in part upon the credibility of the witnesses."). Accordingly, we conclude that the trial court was incorrect when it stated that summary judgment should be awarded to Cedar Fair because the evidence was "insufficient to establish that the cellphone came from a rider on the Invertigo coaster." Instead, the evidence on that point merited presentation to the factfinder.

{¶ 18} But our conclusion that there was evidence in the record supporting Plaintiffs' claim that the cell phone originated from Invertigo does not necessarily mean the trial court erred in awarding summary judgment to Cedar Fair. As explained above, the trial court also concluded that summary judgment should be granted to Cedar Fair on the independent ground that the Plaintiffs failed to present expert testimony regarding the applicable standard of care and any breach thereof. We now turn to that issue.

{¶ 19} While expert testimony is not required when the matter falls within the common knowledge of laypersons, it is essential when the claim involves technical or specialized knowledge. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 581 (1993); *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503 (1964), paragraph one of the syllabus. As we have held, "'where a negligence action involves the skill and judgment of a licensed professional or relates to information outside the knowledge of a layperson, expert testimony is required.'" *Auto Recyclers of Middletown, Inc. v. Stein, L.L.C*., 2025-Ohio-414, ¶ 33 (12th Dist.), quoting *Meranda Nixon Estate Wine, L.L.C. v. Cherry Fork Farm Supply Co*., 2024-Ohio-1523, ¶ 70 (12th Dist.). Such is often the case when a claim concerns injuries arising from an amusement park ride or safety-related industry

standards. *Fleegle v. Funtime, Inc.*, 1999 Ohio App. LEXIS 4640, *21-23 (11th Dist. Sep. 30, 1999) (failure to produce expert testimony regarding design, construction, and maintenance of water slide supported directed verdict in favor of water park); *Carey v. Toys-R-Us*, 1992 Ohio App. LEXIS 4522, *4-5 (failure to produce expert testimony as to industry safety standards prevented plaintiff from establishing duty of care); *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 24 (12th Dist.) (standard of care for protection of residents in group home for wayward boys is established by testimony from an expert witness).

{¶ 20} Here, the alleged breach of Cedar Fair's duty of care concerns the adequacy and placement of protective netting, a matter requiring specialized knowledge beyond the understanding of an ordinary juror. Determining the appropriate type, location, and necessity of such netting depends on analysis of where an object dropped by a rider on Invertigo might land; this implicates questions of how an object may travel depending on the object's weight and shape, the coaster's height, speed, and direction when the object is dropped, and other factors. Such an analysis of how best to protect amusement park attendees from objects falling from roller coasters necessarily also involves reference to industry standards, safety protocols, and other topics not within the common knowledge of laypersons. This means that without expert testimony, the Plaintiffs cannot show that Cedar Fair breached a duty owed to them. And as previously explained, the Plaintiffs failed to identify an expert witness. Accordingly, the trial court correctly concluded that the Plaintiffs' failure to identify an expert witness required the entry of summary judgment for Cedar Fair. *Potter v. South*, 2025-Ohio-2812, ¶ 31, 38 (12th Dist.) (affirming trial court decision granting summary judgment to defendant when plaintiffs failed to produce expert testimony necessary to establish breach of duty of care).

{¶ 21} We affirm the trial court's grant of summary judgment for Cedar Fair and

overrule the Plaintiffs' sole assignment of error.

{¶ 22} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

---

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is affirmed.

It is further ordered that a mandate be sent to the Warren County Common Pleas Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge